(Decided 28th June, 1878.)

---

THE SANTA CLARA MINING ASSOCIATION OF BALTIMORE
*vs.* JOSEPH H. MEREDITH.

*Liability of Corporation for Services rendered by a President or Director without a written Contract for Compensation.*

To entitle a president or director of a corporation to recover for services rendered his corporation, he must prove an *express* contract of employment if the services for which he claims compensation are within the line and scope of his duties *as* president or director.

But if a president or director of a corporation renders services to his corporation which are not within the scope of, and are not required of him by, his

duties *as* president or director, but are such as are properly to be performed by an agent, broker or attorney, he may recover compensation for such services upon an implied promise.

Agency for a corporation is not required to be shown by a resolution of the Board of Directors or other written evidence, but it may be inferred from facts and circumstances.

Where the plaintiff sues in respect of several services rendered by him, some of which are excluded by the instructions of the Court to the jury, and the jury render a verdict *in solido*, it is not for the Court of Appeals to inquire whether the verdict was for a larger sum than it ought to have been.

APPEAL from the Baltimore City Court.

The appellee sued the appellant on the common counts, "for services rendered during 1870, 1871, 1872, 1873 and 1874, in obtaining patent, negotiating loan in London, and various duties in California, Baltimore, Philadelphia and New York."

*Exception.*—At the trial the plaintiff offered the three following prayers:

1. If the jury shall find from the evidence in this case that the plaintiff was employed by the directors of the defendant corporation to obtain from the Land Office at Washington the several patents for the lands owned by the defendant in California, referred to in the evidence, and that he spent a long time in the obtention of the same, and made many visits to Washington for that purpose; and shall further find from the evidence, that such labor and loss of time were not required of him in his discharge of duty as a director of the association, then the plaintiff is entitled to recover for such labor and loss of time such sum as the jury may find from the evidence to be a just compensation for such labor and loss of time.

2. If the jury shall find from the evidence that the plaintiff was employed by the Board of Directors of the defendant to negotiate in Europe a sale of their property in California, or a loan thereon, and that he spent much

time in London for that purpose, and finally obtained a loan from McCalmont & Co., (if they so find the obtention of said loan,) for one hundred thousand dollars, which was paid over to said defendant, then the plaintiff is entitled to recover such compensation for obtaining said loan as the jury may find from the evidence to be just and reasonable; provided the jury shall find that said services were not required in the performance of his duties as a director in said association.

3. If the jury shall find from the evidence that the plaintiff, at the instance and request of the Board of Directors of the defendant, went to California to supervise the opening and working of the mines, and remained there for fifteen months attending to the business of the defendant, and shall find that it was no part of the duty of the president to perform such work and labor, then the plaintiff is entitled to recover such sum for said service as the jury may find from the evidence to be just and reasonable for the same.

And the defendant offered the seven following prayers:

1. The defendant prays the Court to instruct the jury, if they find from the evidence in the cause that the plaintiff was a director during the time he procured the patent for the lands of the Company in the State of California, and rendered the services in connection therewith, that he is not entitled to recover compensation therefor, unless the Company made an express contract with him to render such services.

2. The defendant prays the Court to instruct the jury, if they find from the evidence in the cause that the plaintiff was a director of the defendant during the time he procured the patent for the lands of the Company in the State of California, and rendered the services in connection therewith, that he is not entitled to recover compensation therefor, unless the defendant made an express contract with him to render such services; and the defendant

further prays the Court to instruct the jury, that the resolution passed by the board on the 16th day of July, A. D. 1873, to wit: "On motion of James A. Hooper, it was resolved, that all claims against the association be paid by the treasurer, by checks or cash, and that the claim of the president for cash advances for patent, negotiation of loan, &c., be paid him, when the account has been furnished," is not such a contract as will entitle him to such compensation.

3. The defendant prays the Court to instruct the jury, if they find from the evidence in the case that the plaintiff was a director during the time he rendered the services for the negotiation of the loan for $100,000 in London, he is not entitled to recover for such services, unless they find he had an express contract with the defendant to render such services.

4. The defendant prays the Court to instruct the jury, if they find that the plaintiff was a director of the defendant at the time he rendered the services for the negotiation of the $100,000 loan in London, he is not entitled to recover therefor, unless they find he had an express contract with the defendant to render such services; and he further prays the Court to instruct the jury, that the resolution passed by the board on the 16th day of July, 1873, to wit: "On motion of James A. Hooper, it was resolved, that all claims against the association be paid by the treasurer, by checks or cash, and that the claim of the president for cash advances for patent, negotiation of loan, &c., be paid him when the account is furnished," is not such a contract as will entitle him to such compensation.

5. The defendant prays the Court to instruct the jury, if they find from the evidence that the plaintiff was a director of the defendant during the time he negotiated the loan of $100,000, in gold, in London, he is not entitled to compensation therefor, unless they find that he was employed under an express contract to render services in

connection therewith; and he further prays the Court to instruct the jury, that the power of attorney executed by the Company on the 20th day of October, A. D. 1871, is not such a contract as will entitle the plaintiff to recover compensation thereon

6. The defendant prays the Court to instruct the jury, if they find that at the time the plaintiff rendered the services to the defendant of superintending the development of its mine in the State of California, he was the president of the defendant, and that the salary of the president had been fixed by a resolution of the association, then the plaintiff is not entitled to recover more for his services than is allowed by such resolution.

7. The defendant prays the Court to instruct the jury, if they find that the plaintiff, at the time he performed the services for which he claims compensation, was a director and president of the defendant, and that such services were not rendered in accordance with an express contract, the plaintiff is not entitled to recover, notwithstanding the fact that the Board of Directors passed the resolution of the 16th of September, 1874.

The Court (PINKNEY, J.) granted the plaintiff's first and second prayers, and the defendant's sixth prayer, and rejected the plaintiff's third prayer, and the defendant's first, second, third, fourth, fifth and seventh prayers. The defendant excepted.

The jury rendered a verdict for the plaintiff, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, GRASON and MILLER, J.

*Fielder C. Slingluff*, for the appellant.

Unless the appellee can show that the service performed by him was done under an express contract to perform such service, he is not entitled to recover compensation therefor.

If the services rendered were not rendered in accordance with an express contract to render them, they are, in law, construed to be either a part of his duty as director or president of the appellant, or are gratuitous services, the consideration moving him thereto being his public spirit or his interest in the appellant, of which he was a large stockholder and bondholder.

In England it is well settled that a manager or director of a corporation " can recover no recompense from the company, unless by virtue of an express resolution in the nature of a by-law." *Dunston & Clark, &c. vs. The Imperial Gas Light Company,* 3 *Barn. & Ad.,* 125, (23 *E. C. L.,* 42;) *Collins vs. Godefroy,* 1 *Barn & Ad.,* 950, (20 *E. C. L.,* 514.)

"It is an office of-trust, which, if they undertake, it is their duty to perform fully and entirely." *The York & North Mid. Ry. Co. vs. Hudson,* 19 *Eng. Law and Equity,* 361.

The principles laid down in the above cases have a most apt illustration in the case at bar. The services for which the appellee claims compensation are just such services as it was his duty to perform as the president and director of the appellant. For instance, he claims a commission of $2\frac{1}{2}$ per cent. for renewing a loan of $100,000 with McAlmont, in London. Nothing could be plainer than that one of the duties incidental to the office of a director of a corporation is to provide the necessary funds to carry on the business of the company.

"The directors of the company are, by the nature of their office, the general agents of the company. It may be *regarded as one of their duties to provide for the payment of their debts and liabilites.*" *Belknap vs. Davis,* 19 *Me.,* 455.

And yet here is the director of a company going on a pleasure trip to Europe, who stops on his way in London to renew a loan of the company, which is overdue, and for the payment of which the creditor is pressing ; and for

such renewal he charges a regular broker's commission, admitting that he had no contract with the company, and relying for his cause of action against the company on its acceptance of the loan, and the power of attorney as his contract of employment.

Another item of $2500 he charges against the appellant for superintending the operations of the company in the State of California, where its works were located and its business carried on, when, by the express terms of the by-laws of the appellant, he is required to perform this very duty.

"He shall have the general direction, control and superintendence of all the affairs of the company, and of the conduct of its business."

The Supreme Court of Massachusetts says, in a case like this:

"The plaintiff has not referred to, nor has the Court any knowledge of, a *single instance in this Commonwealth* in which the president of the bank has recovered, or even attempted, in a suit at law, to recover compensation for his official services where there was neither a special contract nor some vote of the corporation providing for its payment." *Sawyer vs. The Pawners' Bank*, 6 *Allen*, 209.

And the Supreme Court of Alabama, in a case involving the same principle, refused to allow extra compensation to a director of a bank for services performed out of the ordinary course of his duty as such, although the Board of Directors had voted the compensation. *The Branch Bank at Mobile vs. Collins*, 7 *Ala.*, 98.

And the same doctrine is held by the Supreme Court of Vermont. *Hall vs. The Mass. R. R.*, 28 *Vt.*, 401; *Hodges vs. R. & P. R. R. Co.*, 29 *Vt.*, 220.

It will thus be seen that the uniform current of decisions in this country sustains the position assumed in the appellant's first, second and third prayers, and that the first and second prayers of the appellee are directly contrary to the American and English decisions.

The Court below, in refusing the appellant's first and second prayers, and in granting the appellee's first and second prayers, relied on the case of *Shackelford vs. N. O. & J. R. R. Co.*, 37 *Miss.*, 202.

It can be justly said that this case stands alone ; that is, does not refer to a single authority to sustain it, and that it is in direct conflict with all of the decisions, both American and English, to be found in the books.

The services were rendered by the appellee from motives of public interest, and because of his self-interest in the company. Although the greater part of these services were performed in '70, '71 and '72, he never makes any demand on the company for compensation until the latter part of '74, and not until after he is turned out of his office. It is perfectly apparent that this demand for compensation was an after-thought, based on the extravagant action of the board by the resolutions of the 16th September, '74. *Sawyer vs. The Pawners' Bank*, 6 *Allen*, 211 ; *Loan Association vs. Stonemetz*, 29 *Pa. St.*, 534 ; *N. Y. & N. H. R. R. Co. vs. Ketchum*, 27 *Conn.*, 180 ; *Stacy vs. State Bank of Ill.*, 4 *Scammon*, 90 ; *The Branch Bank of Ala. vs. Collins*, 7 *Alabama*, 99.

And the presumption in this case that the appellee intended his services to be gratuitous, because of " the advantages incidentally resulting from the position," gains additional force from the circumstances of the case. He was himself very largely interested in the company. He was one of the largest stockholders in it, besides being a large bondholder. " He owned 1500 shares of stock of the par value of $100 per share, and between $11,000 and $12,000 in bonds."

He had no agreement with the company to compensate him for his services. He did not claim the compensation until years after the services were rendered, and not until he was placed in a hostile attitude to the company.

" Where a director of a moneyed institution renders extra services for the company, and during a period of

eight years that he continues a director after rendering such services presents no account and makes no claim for compensation, and there was no express contract on the part of the plaintiff to pay him anything, I think, under the circumstances of the case, none can he implied." *Utica Insurance Co. vs. Bloodgood,* 4 *Wend.,* 652.

The appellant did not pay its directors any salary, nor did its president ever receive any. This was the usage of the company, and "if there be no salary and no particular contract, much must depend, as in other cases, upon the custom with regard to compensation for the particular services, and the *expectation* of the parties growing out of it." *Angell & Ames on Corp., sec.* 317.

The fact that the appellee was an officer of the company was sufficient in law to charge him with a knowledge of this usage, and "the inference would naturally be that he accepted the office and performed its duties without any expectation of being compensated for his services. *Fralor vs. Sonora Manufacturing Co.,* 17 *California,* 594.

*George G. Hooper* and *Wm. Pinkney White,* for the appellee.

The prayers granted by the Court contain the law of the case, and the same was stated by the Court in the most favorable light for the defendant. The plaintiff's first prayer submits to the jury the finding of the employment and rendering of the services alleged to have been performed in obtaining the patent, and that if such service was *not required of him in the discharge of his duty as a director,* then he was entitled to just compensation. The second prayer requires the finding of the employment of the plaintiff by the defendant and of the services rendered in obtaining the loan in England by the plaintiff, the securing the loan and its acceptance by the defendant, then he was entitled to compensation, provided the jury shall find that such services were not rendered in the perofrmance of his duties as a director of the association.

The law is clearly and correctly stated in these prayers, as we shall contend.

Agency for a corporation need not be shown by resolution of the board of directors or other written evidence; it may be inferred from facts and circumstances. *Elysville Mfg. Co. vs. Okisko Co.*, 1 *Md. Ch. Decisions*, 398, *and* 5 *Md.*, 152; *Union Bank vs. Ridgely*, 1 *H. & G.*, 324; *Abbott on Corporations*, 578; *N. Central Railway Co. vs. Bastian*, 15 *Md.*, 501.

Ratification of the previous acts by resolution is as full proof of employment as an antecedent contract.

The directors ratified this agency by resolution of July, 1873. *Abbott on Corporations*, 673.

Director may be agent for the company, and may recover for services, outside of his regular duty, upon an implied promise.

As a general rule, it is not denied that directors are not entitled to compensation for personal services, as such, unless rendered upon some express contract or vote of the company; but this case does not fall under that rule. The work was not performed by a director in his capacity as such director, but was the work of an attorney, or a broker, or an agent, and all of it was outside of a director's duty, and he is entitled to pay in such case. *Angell & Ames on Corp.*, sec. 317; *Shackelford vs. New Orleans R. R. Co.* 37 *Miss.*, 202; *Henry vs. Rutland & Burlington R. R. Co.*, 27 *Vermont*, 435; *Hodges vs. Rutland & Burlington R. R. Co.*, 29 *Vermont*, 220; *Chandler vs. Prest., &c., Monmouth Bank*, 1 *Green's New Jersey*, 201.

The rejection of the plaintiff's third prayer, and the granting of the defendant's sixth prayer, deprived the plaintiff of the right to raise the question of duty in regard to the plaintiff as president, which had been allowed in regard to him as a director, but left it to the jury only to find if he was president while in California, and that his salary had been fixed by resolution, then he could only

recover for that service at the rate of that salary. As the verdict was for an amount *in solido* for all the services, it is not known what was the conclusion of the jury on that point, but the instruction was most favorable to the defendant.

The first five other prayers of the defendant were all properly rejected, for they all proceeded upon the theory that if the plaintiff was a director of the company at the time the services were rendered, no matter how valuable they were, nor whether outside of the line of his duty as director, yet unless he had an *express contract* for compensation, he could recover none. This has already been disposed of.

The seventh prayer puts the same theory forward against the plaintiff, to apply to him in his office of director, and also as president, and claims that in either capacity he cannot recover except upon an *express contract*.

But it is not necessary to have an express contract to recover in a case like this. Assumpsit will lie against a corporation on an implied promise. *Danforth vs. Schoharie T. Co.*, 12 *Johnson*, 227 ; *Chestnut Hill T. P. Co. vs. Rutter*, 4 *S. & R.*, 16.

GRASON, J., delivered the opinion of the Court.

At the trial of this case in the Baltimore City Court the plaintiff offered three prayers, the two first of which were granted and the third was refused, and the defendant seven, all of which were rejected except the sixth, which was granted, and the judgment being in favor of the plaintiff, the defendant appealed.

The question presented by the prayers for our determination is, whether an officer of a corporation can recover for services rendered the corporation without an *express* contract of employment.

We have carefully examined the authorities referred to by the counsel of the respective parties, and without in

this opinion entering upon a review of them in detail, we deem it sufficient merely to state the principles of law which they establish.    To entitle a president or director of a corporation to recover for services rendered his corporation, he must prove an *express* contract of employment, if the services for which he claims compensation are within the line and scope of his duties *as* president or director.    To this effect are nearly all the cases cited in the briefs, and this general principle is admitted by the counsel of the appellee to be correct.    But if a president or director of a corporation renders services to his corporation which are *not* within the scope of, and are not required of him by, his duties *as* president, or director, but are such as are properly to be performed by an agent, broker or attorney, he may recover compensation for such services upon an implied promise.    See *Angell & Ames, on Corporations, sec.* 317, *p.* 316 ; *Chandley vs. Monmouth Bank,* 1 *Green's N. J ,* 260 ; *Henry vs. Rutland and Burlington R. R. Co.,* 27 *Vermont,* 455 ; *Hall vs. Vermont and Mass. R. R. Co.,* 28 *Vermont,* 408 ; *New York and New Haven R. R. Co. vs. Ketchum,* 27 *Conn.,* 181 ; *Evans vs. City of Trenton,* 4 *Zabriskie,* 769.

Agency for a corporation is not required to be shown by a resolution of the board of directors or other written evidence, but it may be inferred from facts and circumstances. *Union Bank vs. Ridgely,* 1 *H. & G.,* 326 ; 1 *Md. Chan. Dec.,* 398 ; *Elysville Man. Co. vs. Okisko Co.,* 5 *Md.,* 159 ; *N. C. Railway Co vs. Bastian,* 15 *Md.,* 501 ; *Bank of the United States vs. Dandridge,* 12 *Wheat.,* 69, 70, 83.

All the prayers of the appellant asked instructions that the plaintiff was not entitled to recover unless the jury should find an *express* contract of employment of the plaintiff by the defendant.    We have shown that his employment as the agent of the defendant may be inferred from facts and circumstances, and the appellant's prayers were, therefore, properly rejected.    There were facts and

circumstances in evidence from which the jury were at liberty to infer that the appellee was employed by the appellant in respect of obtaining a patent for the lands in California, in obtaining the loan in London, and in procuring the surrender and cancellation of the first mortgage bonds of the Company, the accomplishment of the latter being indispensable to the obtention of the loan. There is evidence in the record tending to prove that these services were either authorized by the corporation previously to their rendition, or were ratified by it after they were performed, and that they were such services as were not required of the appellee in the discharge of his duties as a director. All these matters were left to the finding of the jury by the instructions granted in the appellee's first and second prayers, and if found in his favor he was entitled to recover a reasonable compensation for his loss of time and for services rendered. These two prayers were, therefore, properly granted.

The verdict was for an amount *in solido*, and whether in view of the refusal of the Court to grant the appellee's third prayer, and in the granting the appellant's sixth, it was for a larger sum than it ought to have been, this Court cannot inquire. Finding no error in the rulings of Court below, the judgment appealed from will be affirmed.

*Judgment affirmed.*

(Decided 28th June, 1878.)