TITLE INS. & TRUST CO. v. HOME TELEPHONE CO. OF PUGET
SOUND et al.

(District Court, W. D. Washington, S. D. November 7, 1912.

No. 1,769.

1. CORPORATIONS (§§ 308, 566*) — OFFICERS—RIGHT TO COMPENSATION FOR SERVICES OUTSIDE ORDINARY DUTIES—PRIORITIES.

The president of a public service corporation, who receives no salary as such officer, cannot recover for services rendered to the corporation outside the duties of his office, in the absence of an agreement by the corporation, through its directors, to pay therefor, either express or implied; and even in case of such agreement his claim is not entitled to preference over those of mortgage bondholders on its insolvency.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349, 2283–2286; Dec. Dig. §§ 308, 566.*]

2. CORPORATIONS (§ 568*)—PREFERRED CLAIMS—"SIX MONTHS RULE."

The rule that, if a public service corporation diverts its income from the payment of current expenses to the improvement of the mortgaged property, so that the current expenses remain unpaid when a receiver is appointed, the court may, out of the income accruing during the receivership, apply to the unpaid claims for current expenses the amount so diverted, has been limited by so many courts to claims arising within six months before the receivership, that it has become known as the "six months rule."

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2288, 2289; Dec. Dig. § 568.*]

In Equity. Suit by the Title Insurance & Trust Company against the Home Telephone Company of Puget Sound, the Home Telephone & Telegraph Company of Portland, and W. D. Tyler, as receiver of the Home Telephone Company of Puget Sound. On claim of Hervey Lindley, president of the Home Telephone Company of Puget Sound, for services rendered as general manager, and also claim of preference over mortgage bondholders. Claim disallowed.

William D. Fenton and Benjamin C. Day, both of Portland, Or., for complainant.

Dorr & Hadley, of Seattle, Wash., for claimant.

Hayden & Langhorne, of Tacoma, Wash., for receiver.

CUSHMAN, District Judge. This matter is before the court, after testimony taken, for decision of the claim made by Mr. Hervey Lindley against the fund realized from the sale, under mortgage foreclosure, of the property of the Home Telephone Company of Puget Sound. This claim was presented to the receiver for $8,500 for services claimed to have been rendered the Home Telephone Company of Puget Sound, covering a period of 17 months, from March, 1909, to September, 1910, at $500 per month. On April 13, 1910, a temporary receiver was appointed for this company. A permanent receiver was appointed June 13, 1910. Mr. Lindley was president of the company, and this claim is made for services alleged to have been performed as general manager while he was president. No definite arrangement is asserted to have been made concerning payment for the services, either by resolution of the directors or otherwise. The demand is made upon the quantum meruit.

[2] The property of the Home Telephone Company was sold under mortgage, upon which there was due, at the time of the sale, upwards of $1,637,000. It was sold for $550,000. At the time of the distribution of the amount realized among the creditors, it was ordered upon stipulation that $4,000 be withheld from distribution, pending the determination of Mr. Lindley's claim. As originally presented, no preference was claimed over the mortgage debt. At the time of the making of the order, Mr. Lindley waived all of his claim, except for six months prior to the appointment of the receiver and for two months during the temporary receivership, contending for a right to compensation superior to the bonded debt, under what is called the "six months rule."

The general effect of this rule is that, if a public service corporation diverts its income from the payment of the current expenses to the improvement of the mortgaged property, or otherwise for the benefit of the mortgagee, so that the current expenses remain unpaid when the receiver is appointed, the court may, out of the income accruing during the receivership, apply to the unpaid claims for current expenses, accruing within a reasonable time before the receivership, the amount so diverted, at least to those unpaid claims supported by strong equitable considerations, as those of laborers and operatives, unconnected with the management and control of the company—the effect being to prefer such claims over the mortgage and bonded debt. Many courts have limited the allowance of this preference to claims arising within six months of the receivership, to such an extent that it has come to be known as the "six months rule." Upon the petition of certain intervening bondholders, the receiver resists the allowance of Mr. Lindley's claim.

Though the evidence is not exact, it appears that, prior to 1909, there were three telephone companies: The company in question

(the Home Telephone Company of Puget Sound), with a system of telephones in Tacoma and Bellingham; the Home Telephone & Telegraph Company of Portland, with a system of telephones in Portland, Or.; and the Northwestern Long-Distance Telephone Company, providing long-distance service to the two foregoing companies and exchanges in some 300 or more towns in Washington and Oregon. In 1909 there was an organization effected between these companies. A fourth company was organized as an operating company, which was called the "Automatic Home Telephone Company." This latter company seems to have had general control of the other companies. Although the evidence is not entirely clear, it appears that from August, 1909, Lindley was the president of the four companies.

Both the operating company, or Automatic Home Telephone Company, and the Home Telephone Company of Puget Sound, had a general manager other than the president. The latter company had an assistant general manager, superintendent, commercial agent, and purchasing agent. The by-laws of the Home Telephone Company of Puget Sound, in defining the duties of its president, provided:

"The president shall preside at all meetings of the board of trustees and stockholders, and shall certify to the election of trustees. He shall exercise general supervision over all affairs of the company, and sign all stock certificates, and deeds and other instruments, when authorized by the board of trustees.

"The president shall have charge and supervision over all business of the company, and shall appoint, subject to the ratification of the board of trustees, the subordinate officers and agents."

No salary for the president was fixed by the by-laws or otherwise. Mr. Lindley had had no previous experience in the telephone business. In the actual operation of the company he appointed the local managers, and was consulted by the general and local managers as to the policies of the different companies, including the Home Telephone Company of Puget Sound. He was consulted as to changes in heads of departments, superintendents, and managers. Mr. Lindley in his testimony says that these companies "were all allied and connected and hinged on each other for finances and everything of that kind." He testifies that the various managers operated under his direction. He claims nothing for his services as president of the Home Telephone Company of Puget Sound, but for services of a detail nature, akin to those of managers or superintendents, which he testifies he performed.

The preponderance of the evidence does not support his contention in this regard. He testified, generally, that he was required to and did all detail managerical work of the company, but in all the testimony there is no specific act of this nature shown. With possibly one or two unimportant exceptions, such services are shown to have been performed by the local manager, assistant manager, and superintendent, without consultations with Mr. Lindley. No writing of any kind signed by Mr. Lindley, other than as president, is mentioned in the testimony. The officers of the operating company served all of the other companies; but they were paid alone by the operating company, and the expense thereof apportioned, in some

way which does not appear, among the other companies. There was no order of court in any way authorizing the temporary receiver to employ Mr. Lindley.

Complainant contends that, for services rendered a public service corporation, whereby it is kept a going concern, its assets and business conserved for the benefit of the mortgagee, the party performing such services is entitled to a preference. Farmers' Loan & Trust Co. v. Vicksburg & M. R. Co. (C. C.) 33 Fed. 778; Grand Trunk Ry. Co. v. Central Vermont R. Co. (C. C.) 88 Fed. 620; Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co. (C. C.) 53 Fed. 182; Dow v. Memphis & L. R. R. Co. (C. C.) 20 Fed. 260; Wood v. New York & N. E. R. Co. (C. C.) 70 Fed. 741; Southern R. Ry. Co. v. Tillett, 76 Fed. 507, 22 C. C. A. 303; Drennen & Co. v. Mercantile Trust & Deposit Co., 115 Ala. 592, 23 South. 164, 39 L. R. A. 623, 625, 67 Am. St. Rep. 72 et seq.; Cook on Corporations (6th Ed.) vol. 3, § 861; Thompson on Corporations (2d Ed.) vol. 5, § 6449, citing cases; Keelyn & Carolina Mutual Tel. & Tel. Co. (C. C.) 90 Fed. 29; Louisville & N. R. Co. v. Memphis Gaslight Co., 125 Fed. 97, 60 C. C. A. 141; Manhattan Trust Co. v. Sioux City Cable Ry. Co. (C. C.) 76 Fed. 658; Central Trust Co. v. Clark, 81 Fed. 269, 26 C. C. A. 397; Id., 92 Fed. 293, 34 C. C. A. 354; St. Louis Trust Co. v. Riley, 70 Fed. 36, 16 C. C. A. 610, 30 L. R. A. 456; Guaranty Trust Co. v. Galveston City R. Co., 107 Fed. 311, 46 C. C. A. 305; Ill. Trust & Sav. Bank v. Doud, 105 Fed. 123, 44 C. C. A. 389, 52 L. R. A. 481.

It is further contended by claimant that a president of a company, without salary, may recover compensation on quantum meruit for services rendered in the general management of the business of the company, which are outside the ordinary duties of his office. Thompson on Corporations (2d Ed.) vol. 2; Bassett v. Fairchild, 132 Cal. 637, 64 Pac. 1084, 52 L. R. A. 615; Ruby Chief Min. & Mill. Co. v. Prentice, 25 Colo. 4, 52 Pac. 210, citing cases; Toponce v. Corinne Mill, Canal & Stock Co., 6 Utah, 439, 24 Pac. 534; Corinne Mill, Canal & Stock Co. v. Toponce, 152 U. S. 405, 14 Sup. Ct. 632, 38 L. Ed. 493; Felton v. West Iron Mountain Min. Co., 16 Mont. 81, 40 Pac. 70; Severson v. Bimetallic Ex. Min. & Mill. Co., 18 Mont. 13, 44 Pac. 79; Association v. Meredith, 49 Md. 389, 33 Am. Rep. 264; Bank v. Elliott, 55 Iowa, 104, 7 N. W. 470, 39 Am. Rep. 167; Railroad Co. v. Sage, 65 Ill. 328, 16 Am. Rep. 587; Beach on Private Corps. vol. 1, § 235; Ten Eyck v. Pontiac, Oxford & Port Austin R. Co., 74 Mich. 226, 41 N. W. 905, 3 L. R. A. 381, 16 Am. St. Rep. 633.

It is further claimed that compensation for extra services on the part of the officers of a corporation will be allowed, where rendered under circumstances which raise the fair presumption of intention. Thompson on Corps. (2d Ed.) vol. 2, § 1742, pp. 828, 829; Fitzgerald Const. Co. v. Fitzgerald, 137 U. S. 98, 11 Sup. Ct. 36, 34 L. Ed. 608; Huffaker v. Krieger's Assignee, 107 Ky. 200, 53 S. W. 288, 46 L. R. A. 384; 2 Cook on Corps. (6th Ed.) 1929, 1930, citing cases; Shively v. Eureka, etc., Co., 5 Cal. App. 236, 89 Pac. 1073; Bassett

v. Fairchild, 132 Cal. 637, 64 Pac. 1082, 52 L. R. A. 611; Kryger v. Ry., etc., Mfg. Co., 46 Minn. 500, 49 N. W. 255; Chicago, etc., Co. v. Boggiamo, 202 Ill. 312, 67 N. E. 17; Gumaer v. Cripple Creek Tunnel Trans. & M. Co., 40 Colo. 1, 90 Pac. 81, 122 Am. St. Rep. 1024, 13 Ann. Cas. 781; Santa Clara Mining Ass'n v. Meridith, supra; Bagley v. Carthage, etc., R. Co., 165 N. Y. 179, 58 N. E. 895; Bartlett v. Mystic River Corporation, 151 Mass. 433, 24 N. E. 780.

The receiver opposes, contending that, in the absence of corporate action, or an understanding with the members of the board of trustees, or other officers, Mr. Lindley is not entitled to any compensation for his services, and, further, that, if Mr. Lindley is entitled to compensation, it is not a preferred claim over the mortgage bondholders. Wood v. Lost Lake, etc., 23 Or. 20, 23 Pac. 848, 37 Am. St. Rep. 651; Cyc. vol. 10, p. 921; Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, 342, 343; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596; Union Trust Co. v. Ill. Midland Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963; Huidekoper v. Locomotive Works, 99 U. S. 258, 25 L. Ed. 345; Central Trust Co. v. Chattanooga Rd. Co. (C. C.) 69 Fed. 296; Hunt v. Memphis Gas Light Co., 95 Tenn. 136, 31 S. W. 1008; Ill. Trust Co. v. Doud, 105 Fed. 123, 44 C. C. A. 389, 52 L. R. A. 496; Kneeland v. Amer. Loan Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 383; Thomas v. West Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 668, 669; Virginia Coal Co. v. Cent. R. & B. Co., 170 U. S. 355, 18 Sup. Ct. 657, 42 L. Ed. 1073; Gregg v. Met. Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 718, 719; National Bank of Augusta v. Carolina, etc., Rd. Co. (C. C.) 63 Fed. 25; Addison v. Lewis. 75 Va. 701; 34 Cyc. 385, note 89; Wood v. Guar. Trust Co., 128 U. S. 416, 9 Sup. Ct. 131, 32 L. Ed. 473; Rodger Car Co. v. Omaha Ry. Co., 154 Fed. 632, 83 C. C. A. 403; Hale v. Frost, 99 U. S. 389, 25 L. Ed. 420; Porter v. Pittsburg Co., 120 U. S. 649, 7 Sup. Ct. 1206, 30 L. Ed. 838; Morgan's Co. v. Texas Co., 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 634, 635; Thompson v. White Water Valley Ry. Co., 132 U. S. 68, 10 Sup. Ct. 29, 33 L. Ed. 258, 259; So. Ry. Co. v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 475; Lackawanna Co. v. Trust Co., 176 U. S. 298, 20 Sup. Ct. 363, 44 L. Ed. 484; Gregg v. Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717.

[1] Both the facts and the law in this matter are clearly with the receiver. No services performed by Mr. Lindley have been shown, except those owing to the company as its president. None are shown to have been performed under an express or implied agreement with any other officers of the company. Under such circumstances, before he could recover, even without preference, it must be shown that he performed services clearly outside the duties of his office as president, which does not appear. The contrary is shown by the evidence. No equitable reason appears why the president of a corporation—presumably as much or more conversant with its condition than any one else—would be entitled to a preference for any services he might perform for his company. No case has been cited allowing the president of an insolvent corporation such a preference, and it is confidently

asserted in National Bank of Augusta v. Carolina, K. & W. R. Co. (C. C.) 63 Fed. 25, that no such case can be found.

No interest was paid on the bonded debt since 1909. Therefore there was no direct diversion of the current income of the telephone company for the benefit of the bondholders. No diversion of such income is shown by the evidence for the betterment or preservation of the property, which it might be contended would be a diversion, indirectly, for the benefit of the bondholders. Presumably the bondholders knew less of the condition of the company than did its president. There would be no equity, under such circumstances, in according him any preferential right over the mortgage. All the equties are with the bondholders.

The claim is disallowed in toto.